774 So.2d 1129 (2000)
FINOVA CAPITAL CORPORATION, Plaintiff-Appellant,
v.
IT CORPORATION, Defendant-Appellee.
No. 33,994-CA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 2000.
*1130 Cook, Yancey, King & Galloway by Bernard S. Johnson, Jerald R. Harper, Shreveport, Counsel for Appellant.
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, LLP by James R. Lackie, Baton Rouge, Counsel for Appellee.
Before NORRIS, C.J., and GASKINS and DREW, JJ.
DREW, J.
Finova Capital Corporation ("Finova") sued IT Corporation ("IT"), seeking damages for IT's use of equipment owned by Finova's debtor and in which Finova had a secured interest. Sustaining IT's exceptions of no cause of action and no right of action, the trial court dismissed Finova's suit. Finova appeals.
We affirm.

FACTS
Finova, the creditor of GDC Environmental Services ("GDC"), held a first priority, perfected security interest in all of GDC's machinery, equipment, permits and proceeds.
GDC was the subcontractor on a project involving the use of an incinerator for the processing and treatment of soil containing creosote in Winnfield, Louisiana in 1997. GDC agreed to erect and operate an incinerator to decontaminate the soil. IT Corporation was the general contractor on this project.
GDC defaulted on its loans from Finova. In addition, in January 1997, the gas supply necessary to operate the incinerator was cut off due to GDC's failure to pay for the gas. IT notified GDC that it had failed to maintain the required rate of progress, and that it was allowing GDC 20 days to solve the problem. When GDC failed to do this, IT exercised its rights under its agreement with GDC. Article 19 of that agreement states, in relevant part:
Should GDC at any time during its performance of this Agreement fail, refuse or neglect to supply a sufficient or properly skilled staff, equipment or materials and supplies, it is otherwise bound to supply hereunder, in a proper quality or quantity to maintain the rate of progress necessary to complete the Project within the time period specified or fails in any other respect whatsoever to prosecute the work or any portion thereof, IT may, after a twenty (20) calendar day period following a written "notice to terminate" to GDC specifying the failure of GDC to supply adequate staff, equipment or materials and supplies, and should GDC have failed during the twenty (20) calendar day period, to make a good faith effort to cure any such deficiency, IT may then, at IT's option terminate GDC's right to proceed with the Project or any part thereof. In the event of such termination, IT may enter upon the premises and for the purpose of completing the work may (1) take possession of all materials, equipment, tools and appliances thereon belonging to or under the control of GDC and; (2) operate the GDC incinerator facilities for the duration of the Project and IT may finish the Project by whatever method IT may deem necessary, including the hiring of another subcontractor or subcontractors under such form of subcontract as IT may deem admissible. *1131 Following GDC's default of its obligations as subcontractor, IT assumed possession of GDC's equipment and used it in the project. IT sued GDC in federal court in Pennsylvania, and on October 16, 1998, a default judgment of $3,329,505.65 was entered against GDC.
Finova filed suit against IT on October 22, 1998. Finova alleged that IT refused to surrender possession of GDC's project equipment and refused to compensate Finova for IT's use of that equipment. Finova sought an award of damages for IT's use of the equipment. IT filed the peremptory exceptions of no cause of action and no right of action. The trial court sustained the exceptions.

DISCUSSION
Finova argues that the trial court erred in sustaining the exceptions of no cause of action and no right of action.
The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com'n, 94-2015 (La.11/30/94), 646 So.2d 885. The exception is tried on the face of the pleadings and the court accepts the facts alleged in the petition as true, determining whether the law affords relief to the plaintiff if those facts are proved at trial. Barrie v. V.P. Exterminators, Inc., 93-0679 (La.10/18/93), 625 So.2d 1007. We subject a trial court's ruling sustaining an exception of no cause of action to de novo review because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition. Kelly v. CNA Ins. Co., 98-0454 (La.3/12/99), 729 So.2d 1033.
The exception of no right of action challenges whether the plaintiff has an actual interest in bringing the action. Grocery Supply Co. v. Winterton Food Stores, 31,114 (La.App.2d Cir.12/9/98), 722 So.2d 94. When determining whether a plaintiff has a right of action, the court considers whether the plaintiff belongs to a particular class of persons to whom the law grants a remedy for the alleged grievance, or whether the plaintiff has an interest in judicially enforcing the right asserted. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Comm., supra.
Finova first contends that it has a cause of action under La. R.S. 10:9-306, which provides, in part:
§ 9-306. "Proceeds"; secured party's rights on disposition of collateral
(1)(a) "Proceeds" includes the following:
* * * * *
(iv) rights arising out of collateral;
(v) to the extent of the value of the collateral, claims arising out of the loss or non-conformity of, defects in, or damage to the collateral[.]
* * * * *
(2) Except where this Chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor. A purchaser of collateral, however, incurs no personal liability on account of unauthorized transfer unless he has conspired with the debtor to defeat the interest of the secured party.
* * * * *
Finova's position is that when IT used the incinerator, it caused a loss to Finova equal to the diminished value of its collateral, measured by the fair market rental value of the equipment. Therefore, according to Finova, because IT was the cause of that loss and that loss represents "proceeds" of Finova's collateral, it has a cause of action against IT.
*1132 Finova misunderstands the meaning of La. R.S. 10:9-306. The Uniform Commercial Code comment to this article states, regarding its purposes:
1. This section states a secured party's right to the proceeds received by a debtor on disposition of collateral and states when his interest in such proceeds is perfected. It makes clear that insurance proceeds from casualty loss of collateral are proceeds within the meaning of this section.
Therefore, under the plain meaning of R.S. 10:9-306, Finova's secured interest would also extend to and be perfected (assuming other statutory provisions were met) in any rights arising out of the collateral and any claims brought by the debtor for damages to the collateral, as the case may be. No independent cause of action on behalf of the secured party seeking compensation for a third party's use of and damages to its collateral is provided under this section.
Finova next argues that it has a cause of action for unjust enrichment under La. C.C. art. 2298. The five requirements for establishing a claim of unjust enrichment, or actio de in rem verso, are: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to the plaintiff. Baker v. Maclay Properties Co., 94-1529 (La.1/17/95), 648 So.2d 888.
We note from the outset that the fifth ground, the absence of another available remedy at law, is lacking. In doing so, we do not decide whether the facts as alleged in the petition meet the four remaining grounds required in a claim for unjust enrichment. Finova clearly had other remedies available to it.
La. R.S. 10:9-501 reads, in part:
§ 9-501. Default; procedure when security agreement covers both real and personal property
(1) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this Part and, except as limited by Subsection (3), those provided in the security agreement. He may reduce his claim to judgment, execute upon, or otherwise enforce the security interest as provided by R.S. 6:965 et seq., or by any available judicial procedures....

* * * * *
According to the Uniform Commercial Code Comment 6 to this article, under the above cited subsection, "a secured party is entitled to reduce his claim to judgment or to foreclose his interest by any available procedure, outside this Article, which state law may provide." See also La. R.S. 10:9-508 ("For purposes of executory or ordinary process ... seeking enforcement of security interests subject to the provisions of this Chapter and the obligations they secure[.])"
Finova never exercised its option to enforce its security interest by foreclosing on the incinerator through executory or ordinary process in order to effect the seizure and sale of the property and to prevent the alleged unjust enrichment. Finova could have also sought a writ of sequestration while such a matter was pending. When one claims a mortgage or security interest, he may have the property seized under a writ of sequestration, if it is within the power of the defendant to dispose of or waste the property, during the pendency of the action. La.C.C.P. art. 3571.
The exception of no cause of action was properly sustained. Therefore, it is unnecessary for this court to address the merits of the exception of no right of action.

DECREE
At appellant's costs, the judgment is AFFIRMED.